IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID LEE PUTNAM,                )
AIS #155060X,                    )
                                 )
          Petitioner,            )
                                 )
                                 )          CASE NO. 1:11-CV-965-WHA
                                 )
TONY PATTERSON,  et al.,         )
                                 )
          Respondents.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE[1]

## I.  INTRODUCTION

This cause of action is before the court on a 28 U.S.C. § 2254 petition for habeas

corpus relief filed by David Lee Putnam, a state inmate and habitual felony offender, on

November 8, 2011.[2]  Putnam is presently incarcerated pursuant to a conviction for the

unlawful manufacture of a controlled substance in the first degree imposed upon him by

the Circuit Court of Houston County, Alabama on February 10, 2005.[3]

---

[1] All exhibits and accompanying page numbers referenced herein are those assigned by this court in the docketing process.

[2] The law is well settled that a pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  The petition indicates Putnam submitted the petition for mailing on November 8, 2011.  *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 8.  In light of the foregoing and for purposes of the proceedings herein, the court considers November 8, 2011 as the date of filing.

[3] Under Alabama law, "[u]nlawful manufacture of a controlled substance in the first degree is a Class A felony."  *Ala. Code* § 13A-12-218(b).

At the time of Putnam's controlled substance conviction, the trial court had before it three prior felony convictions, none of which was a Class A felony, for purposes of sentence enhancement under the provisions of the Alabama Habitual Felony Offender Act ("HFOA"), *Ala. Code* § 15-5-9, *et seq*., as amended; *Respondents' Exhibit A (Part 3) - Court Doc. No. 5-3* at 81. Thus, in its discretion, the trial court could impose a sentence of "imprisonment for life or life without parole." *Ala. Code* § 13A-5-9(c)(3); *Respondents' Exhibit A (Part 3) - Court Doc. No. 5-3* at 86 ("There are only two sentences available to this Court, one is life and the other is life without parole."). Based on Putnam's criminal record "that goes all the way back to 1988" and includes over twenty prior felony convictions, the trial court exercised its discretion and imposed a sentence of life without parole. *Id*. at 86-87.

## II. STATUTORY HISTORY

Prior to the 2000 amendment of the HFOA and under the circumstances present in Putnam's case, a state court was required to impose a sentence of life imprisonment without parole.[4] However, effective May 25, 2000, the legislature amended § 13A-5-9(c)(3) to allow punishment of such offenders either to "imprisonment for life or life without possibility of parole, in the discretion of the trial court." Since Putnam was sentenced on

---

[4] Before the 2000 amendment, *Ala. Code* § 13A-5-9(c)(3) provided that: "In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed ... a Class A felony, he must be punished by imprisonment for life without parole."

March 11, 2005, he received the benefit of the amendment to § 13A-5-9(c)(3) allowing for imposition of a life sentence. The Alabama legislature again amended the HFOA on December 1, 2001 by adding § 13A-5-9.1.  This statute granted trial judges the authority to consider retroactively sentences of life imprisonment for non-violent, Class A convicted offenders with three or more felony convictions, none of which were Class A felonies, who had been convicted prior to the May 25, 2000, amendment to the Act and were sentenced to life imprisonment without parole.  Section 13A-5-9.1 directs that "[t]he provisions of Section 13A-5-9 [as amended] shall be applied retroactively by the sentencing judge or, if the sentencing judge is no longer in office, by any other circuit judge appointed by the presiding judge, for consideration of early parole of each nonviolent convicted offender based on evaluations performed by the Department of Corrections and approved by the Board of Pardons and Paroles and submitted to the court."  The Alabama  Supreme Court has determined:

> ***Section 13A-5-9.1 directs the sentencing judge or [properly appointed circuit judge] to apply the provisions of § 13A-5-9 retroactively, thereby making the benefits of the 2000 amendment to the HFOA available to inmates who were sentenced pursuant to the HFOA before it was amended in 2000***.  Section 13A-5-9(c)(3), as amended in 2000, allows a sentencing judge to decide in certain circumstances whether a sentence of life imprisonment or life imprisonment without the possibility of parole is appropriate for a particular inmate [sentenced prior to the 2000 amendment to the HFOA].  In making that decision, the sentencing judge does not have the power to decide the secondary issue -- whether the defendant will be granted parole should the judge sentence him or her to "straight" life imprisonment.  Under § 13A-5-9.1, a judge applying § 13A-5-9(c)(3) to a

previously sentenced defendant merely has the authority to conduct a new sentencing hearing, and in the judge's discretion, to modify a previous sentence under which a defendant would never have been eligible for parole to a sentence of "straight" life imprisonment, under which a defendant might thereafter become eligible for parole, depending upon the factors then established by the Parole Board....

The clear reference in § 13A-5-9.1 to the provisions of § 13A-5-9 makes it obvious that the trial court's only authority is to modify the sentence of an inmate who is not eligible for parole **under the sentence imposed pursuant to the HFOA before its amendment in 2000**, sentencing that inmate instead to a sentence under which he or she may become eligible for parole.

* * *

... Reading § 13A-5-9.1 in conjunction with § 13A-5-9, it is clear that a sentencing judge or [judge assigned for resentencing] can resentence only two narrowly defined classes of habitual offenders:  those who had been sentenced [prior to the 2000 amendment] to life imprisonment without the possibility of parole under the mandatory provisions of the HFOA upon conviction of a Class A felony with no prior Class A felony convictions; and those who had been sentenced to life imprisonment under the mandatory provisions of the HFOA upon conviction of a Class B felony.  Moreover, of those habitual offenders, the judge can resentence only those who are nonviolent offenders.

*Kirby v. State*, 899 So.2d 968, 973-974 (Ala. 2004) (emphasis added).  "There are three requirements for eligibility to have a sentence reconsidered under § 13A-5-9.1:  (1) the inmate was sentenced before May 25, 2000, the date the 2000 amendment to the HFOA became effective; (2) the inmate was sentenced to life imprisonment without the possibility of parole pursuant to § 13A-5-9(c)(3) and had no prior Class A felony convictions or was sentenced to life imprisonment pursuant to § 13A-5-9(c)(2) ...; and (3) the inmate is a 'nonviolent convicted offender.'  An inmate must satisfy all three requirements before he

... is eligible for reconsideration of sentence under § 13A-5-9.1. If a circuit court determines that an inmate is eligible for reconsideration of his or her sentence, the court then has the authority pursuant to § 13A-5-9.1 to resentence the inmate, within the bounds of § 13A-5-9(c)(2) or § 13A-5-9(c)(3), as amended, if it so chooses." *Holt v. State*, 960 So.2d 726 at 734-735 (Ala.Cr.App. 2006), writ quashed, 960 So.2d 740 (Ala. 2006). Consequently, both the Alabama Supreme Court and Alabama Court of Criminal Appeals have ruled that only inmates sentenced before May 25, 2000 are eligible for reconsideration of their sentence under § 13A-5-9.1. *Kirby*, 899 So.2d at 973; *Holt*, 960 So.2d at 734-735.

It is likewise well settled that "a circuit court is not required to resentence an inmate merely because it determines that the inmate is eligible for reconsideration of his or her sentence." *Holt*, 960 So.2d at 735, n.3. In addition, although trial courts have subject-matter jurisdiction over successive motions for reconsideration, there is nothing "requiring the trial courts to consider second or successive motions for reconsideration under § 13A-5-9.1...." *Ex parte Gunn*, 993 So.2d 433, 437 n.6 (Ala. 2007). Neither § 13A-5-9.1 nor case law interpreting its provisions "prohibit[s] a circuit court from denying a motion for sentence reconsideration solely on the basis that it is a successive motion [after consideration of the merits of a previous motion filed by an eligible inmate]. The intent of the legislature in enacting § 13A-5-9.1 was to afford nonviolent inmates sentenced before the 2000 amendment to [§ 13A-5-9(c)(2) and § 13A-5-9(c)(3) of] the Habitual

Felony Offender Act the opportunity to receive the benefits of that amendment, i.e., to afford those nonviolent inmates the opportunity for the circuit court to exercise its **discretion** in determining the sentence to be imposed, discretion that was not available before the amendment." *Ashford v. State*, 12 So.3d 160, 162 (Ala.Cr.App. 2008) (emphasis in original).

On November 18, 2008, Putnam filed a motion for relief from sentence seeking reconsideration of his sentence under *Ala. Code* § 13A-5-9.1.  In this motion, Putnam argued that he should be allowed to seek reconsideration of his sentence in the same manner as inmates sentenced prior to amendment of the HFOA and requested that the trial court "(a) determine that it has jurisdiction to consider his application for re-sentencing; (b) direct the Parole Board and/or the Department of Corrections to submit a report regarding the Defendant's behavior while incarcerated; (c) set a hearing to consider this application for re-sentencing; and (d) enter an order after hearing granting the relief requested and re-sentencing the Defendant to life in prison **with** the possibility of parole." *Respondents' Exhibit Z - Doc. No. 5-28* at 11 (emphasis in original).

The trial court issued an order on October 30, 2009, denying the motion for relief from sentence.  *Respondents' Exhibit Z - Doc. No. 5-28* at 42-44.  In its order, the court referenced the three eligibility requirements necessary for reconsideration of an inmate's sentence under the provisions *Ala. Code* § 13A-5-9.1 and noted that "Putnam does not

appear to meet the eligibility requirements for reconsideration under Section 13A-5-9.1"

because he "was convicted [on] February 10, 2005 and [therefore] sentenced under the

amended habitual felony offender act." *Id*. at 42-43.  Consequently, "[t]his Court had the

option of sentencing Defendant Putnam to life or life without the possibility of parole."

*Id*. at 43.  "Defendant argues that he is denied equal protection if he cannot avail himself

of a sentence reconsideration under Section 13A-5-9.1.  However, this argument is

misplaced.  When the legislature amended the habitual offender act the changes were made

prospective [and therefore applied to Putnam at his sentencing].  However, because [those]

criminal defendants who were sentenced prior to the effective date of the act [were

excluded from eligibility for consideration of the more lenient sentencing terms], the

legislature saw fit to allow these defendants reconsideration of [their] sentences by

applying the amendments retroactively pursuant to Section 13A-5-9.1."  *Id*. at 44.

Putnam appealed the trial court's denial of his motion for relief from sentence.  On

June 18, 2010, the Alabama Court of Criminal Appeals affirmed the decision of the trial

court in an unpublished memorandum opinion.  *Respondents' Exhibit DD - Doc. No. 5-32*.

The appellate court's opinion, as is relevant to the claims raised in the instant habeas

petition, reads as follows:

> David Lee Putnam appeals from the denial of his motion to reconsider
> his sentence filed pursuant to § 13A-5-9.1, Ala. Code 1975, ("Kirby
> Motion").  Kirby v. State, 899 So. 2d 968 (Ala. 2004).  On February 10,
> 2005, Putnam was convicted of first-degree unlawful manufacture of a

controlled substance, a violation of § 13A-12-218, Ala. Code 1975.  On March 11, 2005, he was sentenced as a habitual felony offender to life in prison without the possibility of parole.

On November 18, 2008, Putnam filed his <u>Kirby</u> motion seeking sentence reconsideration.  On October 30, 2009, the circuit court denied Putnam's motion holding that Putnam was sentenced after the effective date of § 13A-5-9.1, Ala. Code 1975.  [As set forth by prior case law, there are three elements an inmate must establish to gain eligibility for reconsideration of his sentence under § 13A-5-9.1.  One of these eligibility criteria requires that the sentence at issue was imposed upon the inmate before May 25, 2000, the effective date of the amendment to the Habitual Felony Offender Act.]  On October 30, 2009, the circuit court denied Putnam's motion holding that Putnam was sentenced after the effective date[s] of [both the amendment to § 13A-5-9(c)(3) and] § 13A-5-9.1, Ala. Code 1975.  Putnam acknowledges in [his] brief that he was sentenced after the effective date of [each statute]; however, he urges this Court to hold that § 13A-5-9.1, Ala. Code 1975, as applied to him, is unconstitutional due to equal protection and due process violations.

I.

Putnam first asserts § 13A-5-9.1, Ala. Code 1975, as interpreted by Alabama's appellate courts, runs afoul of the Fourteenth Amendment's guarantee of equal protection.  Specifically, Putnam asserts that § 13A-5-9.1, Ala. Code 1975, creates a system that adversely impacts non-violent offenders sentenced after May 25, 2000, relative to those non-violent offenders who were sentenced before May 25, 2000.  The adverse impact Putnam asserts is related to his inability to bring a <u>Kirby</u> Motion for reconsideration of his 2005 sentence.  Putnam, however, lacks the standing necessary to bring an equal protection claim against this statute.

Prior to 2000, an offender such as Putnam with three or more prior felony convictions [none of which constituted a Class A felony] would have received a mandatory term of life in prison without parole upon conviction of a Class A felony.  <u>See</u> § 13A-5-9(c)(3), Ala. Code 1975 (1994) (amended 2000).  As amended in 2000, § 13A-5-9(c)(3), Ala. Code 1975, provided the circuit court with the discretion to sentence an offender such as Putnam to

life in prison or life in prison without the possibility of parole.  Section 13A-5-9.1, Ala. Code 1975, is a statute that calls for the retroactive application of § 13A-5-9, Ala. Code 1975, allowing the sentencing judge the discretion to reconsider the sentence of a non-violent habitual felon sentenced prior to the effective date of the 2000 amendment in light of the new sentencing scheme. In other words, the purpose of § 13A-5-9.1, Ala. Code 1975, is to confer the benefit of the 2000 amendment to the HFOA to those convicted prior to the amendment.

Putnam apparently desires the ability to have his sentence reconsidered.  However, Putnam ignores the fact that when he was sentenced in 2005, the sentencing judge already possessed the discretion to decide between a sentence of life in prison and life in prison without parole.  Thus, § 13A-5-9.1, Ala. Code 1975, does not adversely impact Putnam because he has already been conferred the benefit of the 2000 amendment to the HFOA, i.e., the new level of discretion vested with the sentencing judge.  "'"A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights."'"  Express Enterprise, Inc. v. Waites, 979 So.2d 754, 755 (Ala. 2007) (quoting State v. Woodruff, 460 So.2d 325, 328 (Ala.Crim.App. 1984) (quoting in turn Bland v. State, 395 So.2d 164, 166 (Ala.Crim.App. 1981)).  Because the statute does not adversely impact Putnam, he lacks standing to challenge its constitutionality.

II.

Putnam also claims § 13A-5-9.1, Ala. Code 1975, is unconstitutional because it violates due process....  [F]or the reasoning supplied in the previous section, Putnam lacks the standing to challenge this statute [on due process grounds].

Based on the foregoing, the judgment of the circuit court is affirmed.

*Respondents' Exhibit DD - Doc. No. 5-32* at 2-5 (footnotes omitted).

Putnam filed an application for rehearing, *Respondents' Exhibit EE - Doc. No. 5-33,*

which the Alabama Court of Criminal Appeals overruled on July 16, 2010.  *Respondents'*

9

*Exhibit FF - Doc. No. 5-34*  Putnam then filed a petition for writ of certiorari with the Alabama Supreme Court. *Respondents' Exhibit GG - Doc. No. 5-35*. The Alabama Supreme Court denied the petition for writ of certiorari and issued the certificate of judgment on November 19, 2010.  *Respondents' Exhibit II - Doc. No. 5-37*.

In the instant habeas petition, Putnam challenges the constitutionality of *Ala. Code* § 13A-5-9.1 and the holdings of the state courts with respect to the identification of inmates eligible for sentence reconsideration.  Putnam acknowledges that § 13A-5-9.1 specifically addresses the retroactive application of the 2000 amendment to § 13A-5-9. Putnam further acknowledges that the state courts have limited the application of § 13A-5-9.1 to prisoners sentenced prior to May 25, 2000.  *Kirby*, 899 So.2d at 973; *Holt*, 960 So.2d at 734-735.  Putnam argues, however, that this court should overrule the statute and the decisions of the state courts "as violative of Due Process and Equal Protection." *Attachment to Petition for Writ of Habeas Corpus Relief - Doc. No. 1-1* at 15.  Specifically, Putnam asserts "that to exclude him from presenting the changes in his status as an Alabama prisoner, futuristically to the sentencing court just like those prisoners sentenced prior to May 25, 2000 is a violation of his Equal Protection and Due Process protections under the United States Constitution.... The appellate courts of the State of Alabama interpretations of § 13A-5-9.1 have combined to make [the statute] unconstitutional as an impermissible violation of the equal protection and due process provisions provided to

David Lee Putnam and other ... non-violent offenders [sentenced after May 25, 2000]." *Id.* at 18-19.

The respondents filed answers in which they argue that Putnam is entitled to no relief as he does not challenge the constitutionality of the basis for his current custody which is a required element for a federal habeas petition. *Respondents' Answer - Doc. No. 5* at 14-17; 28 U.S.C. § 2254(a) (emphasis added) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court **only on the ground that he is in custody in violation of the Constitution or laws ... of the United States**.").  Consequently, the respondents argue, Putnam fails to meet the requisite elements for proceeding before this court on a habeas corpus application and, to the extent he invokes habeas as a remedy, this case is due to be summarily dismissed.

Assuming *arguendo* that the claims presented in the petition are properly before the court for review, the respondents argue that Putnam is procedurally defaulted on his due process claim, as he failed to present it to the state courts in accordance with the state's procedural rules and the last state court to rule on the claim, the Alabama Court of Criminal Appeals, deemed it defaulted.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Smith v. Jones*, 256 F.3d 1135, 1140-1146 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002); *Brownlee v. Haley*, 306 F.3d

1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990); *Teague v. Lane*, 489 U.S. 288 (1989). The respondents further assert that the appellate court's alternative ruling on the merits of the due process claim does not negate the procedural default. "[A] state court need not fear reaching the merits of a federal claim in an ***alternative*** holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) (emphasis in original); *see also Alderman v. Zant,* 22 F.3d 1541, 1549-51 (11th Cir.) (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lacked merit based on the evidence, "[t]his ruling in the alternative did not have the effect ... of blurring the clear determination by the [Georgia habeas corpus] court that the allegation was procedurally barred"), *cert. denied,* 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994).

With respect to Putnam's equal protection claim, the respondents contend that he is entitled to no relief from this court as the state courts properly adjudicated this claim when they determined Putnam had not been adversely impacted by the statue and, therefore, lacked standing to challenge the statute. *Respondents' Supplemental Answer - Doc. No.*

*8* at 6-9; *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*,529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).

The respondents similarly assert that Putnam has failed to establish a violation of his equal protection rights. "Putnam was originally sentenced under the current (post-2000 amendment) version of the HFOA.  Thus, unlike those defendants who were sentenced to mandatory terms of life without parole for class A felonies with three prior convictions under the pre-2000 amendment version of the HFOA, Putnam could have been sentenced to life or life without parole, within the discretion of the trial court, at his original sentencing.  Because Putnam was sentenced under the amended version of the HFOA [and thereby given the benefit of its terms allowing for either a sentence of life or life without parole], he is not in the class of persons who are eligible [under state law] to seek reconsideration of his sentence under § 13A-5-9.1." *Respondents' Supplemental Answer - Doc. No. 8* at 8 (internal citations omitted).

The court provided Putnam an opportunity to file a response to the answers of the respondents.  In his response, Putnam requests that this court certify the issues presented herein to the Alabama Supreme Court "for a guiding opinion."  *Petitioner's Response - Doc. No. 10* at 4.  Putnam argues that "to exclude all prisoners from seeking sentence

review pursuant to Ala. Code § 13A-5-9.1 solely on the fact their sentence occurred after May 25th 2000 is a ground that rests on grounds wholly irrelevant to the achievement of the State's objective in decreasing prison population." *Id*. at 8.  Putnam also argues that the "underinclusiveness of himself and others similarly situated [constitutes] a suspect class, [which] manifests a prima facie violation of the equal protection requirements." *Id*.

Upon review of the 28 U.S.C. § 2254 petition, the answers of the respondents, Putnam's response to the answers, the state court record, opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition is due to be denied.

## III.  DISCUSSION

### A.  Due Process

Under 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court ***only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States***." (emphasis added). The state courts have determined that Putnam is not eligible for reconsideration of his sentence under *Ala. Code* § 13A-5-9.1 as he was sentenced after the effective date of this code section and, therefore, received the benefit of the original amendment to *Ala. Code* § 13A-5-9(c)(3) at the time of his

14

sentencing.

Putnam asserts that he has been denied due process by the decisions of the state courts deeming him ineligible for reconsideration of his sentence, and seeks entitlement to eligibility for sentence reconsideration.  However, determination of which inmates are eligible to seek a sentence reduction under §§ 13A-5-9(c)(3) and 13A-5-9.1 "is purely a question of state law, and, as such, provides no basis for federal habeas corpus relief.  *See Carrizales [v. Wainwright*, 699 F.2d 1053, 1055 ((11th Cir.1983)]."  *Curry v. Culliver*, 141 Fed.Appx. 832, 834 ((11th Cir. 2005).

### B.  Equal Protection - Adjudication by the State Court

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."  *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under the provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable

15

determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

It is clear that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. 529 U.S., at 404–405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [United States Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. *Id.,* at 405–406, 120 S.Ct. 1495. The [district] court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407–408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state courts application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is

16

different from an incorrect one.  *Id.,* at 409–410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly')." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Windom v. Secretary, Dept. of Corrections*, 578 F.3d 1227 (11th Cir. 2009) ("A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's.") (quotation and other marks omitted); *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) ("A state court conducts an 'unreasonable application' of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.").

The Supreme Court has held "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing

law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Clearly established federal law is ***not*** the law of the lower federal courts, including this court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.' *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523." *Putman*, 268 F.3d at 1241 (emphasis in original, quoting

18

*Williams*, 529 U.S. at 412).  The reviewing court "must determine what arguments or theories supported or ... could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, __, 131 S.Ct. 770, 786 (2011).  "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1333 (11th Cir. 2009).  Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, __ U.S.__, __, 132 S.Ct. 38, 43 (2011) (quoting *Harrington*, 562 U.S. at __, 131 S.Ct. at 786.)  "The usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because §2254(d)'s 'highly deferential standard for evaluating state-court rulings ... demands that state-court decisions be given the benefit of the doubt.' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (internal citation omitted)." *Allen v. Secretary, Florida Dept. of Corrections*, 611 F.3d 740, 748 (11th Cir. 2010).  As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable....  [Section 2254(d)] preserves authority to issue the writ in cases where

there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther."  *Harrington*, 562 U.S. at ___, 131 S.Ct. at 786.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...."  538 U.S. at 636, 123 S.Ct. at 1851.

As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts."  *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007).  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell*, 535 U.S. at 694.

Putnam maintains that the state courts' interpretation of *Ala. Code* § 13A-5-9.1 that only non-violent inmates convicted prior to May 25, 2000 are permitted to file motions for reconsideration have rendered the statute "unconstitutional as applied to Putnam" because due to the date of his conviction he has been denied the right to seek reconsideration of his sentence. *Attachment to the Petition for Writ of Habeas Corpus Relief - Doc. No. 1-1* at 3-5. Putnam asserts that the holdings of the Alabama Court of Criminal Appeals and Alabama Supreme Court authorizing "non-violent inmates sentenced before May 25, 2000, to submit successive petitions under § 13A-5-9.1 for review of their life sentences," while denying this opportunity to inmates sentenced after May 25, 2000, "have set up a system which treats a class of non-violent inmates like Putnam, who are also serving a life without possibility of parole, differently based on nothing more than the date on which they were sentenced." *Id*. at 3-4. The state courts "have set up a procedure which allows one class of convicted nonviolent offenders to (a) petition the trial court numerous times for a review of their sentences and (b) to have their post-conviction prison behavior considered as a part of that review; whereas another class, to which Putnam belongs, may not." *Id*. at 4. The "interpretation[s] of the statute have made it become an unconstitutional violation of the equal protection and due process provisions" of the Constitution. *Id*. at 5.

The Alabama Court of Criminal Appeals determined that Putnam lacked standing to challenge the constitutionality of § 13A-5-9.1 as the statute had no adverse impact on

him "because he has already been conferred the benefit of the 2000 amendment to the HFOA." *Respondents' Exhibit DD - Doc. No. 5-32* at 4-5.  The clearly established federal law addressing standing to challenge the constitutionality of a stature is set forth in *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140 (1979).  In *Allen*, the Court determined that "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. " *Id*. at 154-155.  With respect to claims attacking criminal sentencing statutes, "a defendant does not have standing to mount a constitutional challenge to the application of a statute, if that application did not adversely affect his sentence -- that is, cause his sentencing outcome...." *United States v. Ramos*, 695 F.3d 1035, 1047 (10th Cir. 2012); *United States v. Mendes*, 912 F.2d 434, 438 (10th Cir. 1990) (where alleged facts utilized to attack sentencing statute did not reflect facts of defendant's case he "lack[ed] standing to challenge the facial validity of" the sentencing statute at issue because purported constitutional defect in statute did not adversely impact his own rights); *United States v. Gray,* 577 F.3d 947, 950-951 (8th Cir. 2009) (Where defendant's sentence is unaffected by sentencing statute under attack, defendant "lacks standing to challenge the constitutionality of the statute."); *United States v. Robinson,* 241 F.3d 115, 122 (1st Cir. 2001) ("The principal problem with the appellant's thesis is that she lacks standing to mount the challenge. Her sentence was not premised on the [challenged sentencing provision]...."; *United States v. Johnson,* 886 F.2d 1120, 1122 (9th Cir. 1989) (Defendants

not affected by the provision of the statute at issue "lack standing to challenge that aspect of [the statute].");  *United States v. Scott,* 627 F.3d 702, 705 (8th Cir. 2010) ("Because [the defendant's] sentence was unaffected by [challenged sentencing provision], ... [he] lacks standing to challenge the constitutionality of the statute.").

1.  <u>Facially Discrminatory Nature of the Statute</u>.  Section 13A-5-9.1 of the Alabama Code, by its very terms, permits only retroactive application of the amended provisions of *Ala. Code* §13A-5-9.  Putnam argues that the statute's categorical exclusion of inmates sentenced after enactment of the HFOA from eligibility for sentence reduction violates his equal protection rights.

Section 13A-5-9.1 does not apply to a suspect or quasi-suspect class, nor does it involve a fundamental right.  *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011) (no fundamental right or suspect class at issue where petitioner challenged differentiation of sentences provided to inmates based on the date of their sentences, i.e. those sentenced before enactment of the Fair Sentencing Act and those sentenced after its enactment); *Foster v. Washington State Board of Prison Terms and Paroles*, 878 F.2d 1233, 1235 (9th 1989) ("There is no denial of equal protection in having persons sentenced under one system for crimes committed before [the effective date of a change in sentencing parameters] and another class of persons sentenced under a different system.  *See Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d

308 (1983). The standard is of a rational relationship to governmental purpose. *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)."). Putnam "has not alleged a denial of equal protection based upon his membership in any suspect class; he has alleged denial based upon his membership in the class consisting of [Alabama] state prisoners sentenced [after the effective date of the sentencing amendment]. The alleged constitutional inequality derives from the necessarily bifurcated nature of [the State's] sentencing system following enactment of the [amendment to the HFOA]. [Federal courts] apply the rational-basis review to this type of equal-protection claim." *McQueary v. Blodgett*, 924 F.2d 829, 834, n.6 (9th Cir. 1991).

Under these circumstances,

the question of whether the [challenged statute] violates equal protection is subject to rational basis review. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). Rational basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2100-01, 124 L.Ed.2d 211 (1993); *see also Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). Policy determinations "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." .... [T]he policy determination "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313, 113 S.Ct. at 2101. For these reasons the [statute] is accorded a strong presumption of validity.

24

*Houston v. Williams*, 547 F.3d 1357, 1363 (11th Cir. 2008).

Section 13A-5-9.1 allows a trial court, in its discretion, "to decide in certain circumstances whether a sentence of life imprisonment or life imprisonment without the possibility of parole [imposed prior to the 2000 amendment to the HFOA] is appropriate for a particular inmate." *Kirby*, 899 So.2d at 973.  This authority is accorded the state's trial judges by the legislature in an effort to determine whether a sentence of life or life without parole is unduly harsh under the circumstances relevant to the eligible inmate's underlying conviction.  "If a circuit court determines that an inmate is eligible for reconsideration of his or her sentence, the court then has the authority pursuant to § 13A-5-9.1 to resentence the inmate, within the bounds of § 13A-5-9(c)(2) or § 13A-5-9(c)(3), as amended, if it so chooses.  If, on the other hand, the circuit court determines that the inmate fails to meet any or all of the eligibility requirements, then the circuit court must deny the inmate's § 13A-5-9.1 motion because a circuit court has jurisdiction to resentence only those inmates who meet [all of] the eligibility requirements of § 13A-5-9.1...." *Holt*, 960 So.2d at 735.

The eligibility requirements attendant to sentence reduction are rationally related to the state's interest of ensuring equitable sentences for those nonviolent offenders sentenced before the May 25, 2000, amendment to the HFOA who received mandatory sentences of either life imprisonment upon conviction of a Class B felony or life imprisonment without

parole upon conviction of a Class A felony.  Disparity of treatment among inmates based on the date of imposition of sentence occurring due to an intervening change in the law with respect to available sentences "is plainly rational, as 'discrepancies among prisoners who committed similar crimes are inescapable whenever [the legislature] raises or lowers the penalties for an offense.' *United States v. Goncalves*, 642 F.3d 245, 253 (1st Cir. 2011)." *Speed*, 656 F.3d at 720; *Foster*, 878 F.2d at 1235 ("Improvement in sentencing is rational governmental purpose. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989)."). Consequently, the statute's denial of eligibility for sentence reductions to convicted habitual felons like Putnam who received the benefit of the 2000 amendment to the HFOA at the time of sentencing does not violate the Equal Protection Clause. *Houston*, 547 F.3d at 1364; *Foster*, 878 F.2d at 1235; *McQueary*, 924 F.2d at 834. Moreover, it is clear that § 13A-5-9.1 did not have any adverse impact on the sentence imposed upon Putnam as the trial judge specifically stated that he chose to sentence Putnam to life imprisonment without parole due to Putnam's extensive criminal history. *Respondents' Exhibit A (Part 3) - Court Doc. No. 5-3* at 86-87.

2.  <u>Application of the Statute as Violating Equal Protection.</u>"There are three requirements for eligibility to have a sentence reconsidered under § 13A-5-9.1:  (1) the inmate was sentenced before May 25, 2000, the date the 2000 amendment to the HFOA became effective; (2) the inmate was sentenced to life imprisonment without the possibility

of parole pursuant to § 13A-5-9(c)(3) and had no prior Class A felony convictions or was sentenced to life imprisonment pursuant to § 13A-5-9(c)(2)...; and (3) the inmate is a 'nonviolent convicted offender.'  An inmate must satisfy all three requirements before he or she is eligible for reconsideration of sentence under § 13A-5-9.1."  *Holt v. State*, 960 So.2d 726, 734-735 (Ala.Crim.App. 2006).  Putnam contends that he is a non-violent offender and denying him eligibility to seek reconsideration under § 13A-5-9.1 deprives him of equal protection because non-violent offenders sentenced prior to May 25, 2000, are permitted to seek reconsideration of their sentences, whereas he is not provided this opportunity.

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Dept. of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).

> [O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite

of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Putnam argues that because habitual offenders with no prior Class A felonies sentenced to life imprisonment without parole before enactment of the May 25, 2000, amendment to the HFOA are allowed to seek reconsideration of their sentences the denial of eligibility to him for this same treatment is violative of his equal protection rights. However, Putnam is not similarly situated to persons sentenced under the old provisions of the HFOA. *Murray v. Crowley*, 913 F.2d 832, 834 (10th Cir. 1990) (An inmate convicted under statute effective at the time of his offense "is not similarly situated to persons convicted under" a different statute in effect at the time of their offenses.); *United States ex rel. Scott v. Illinois Parole & Pardon Board,* 669 F.2d 1185 (7th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982) ("States are certainly free to amend their sentencing laws and, having done so, they are not required to apply them retroactively to persons who have been validly sentenced under the law as it previously existed....  Having

been properly sentenced under the law as it existed at the time of his conviction, [the inmate] is not entitled to modification at this time."); *Ex parte Zimmerman*, 838 So.2d 408, 411 (Ala. 2002) ("[T]he amendatory act, by mandating that its benefits apply only to those whose sentences were not final on May 25, 2000, created two classes, thereby negating any possibility of its subjects being persons in like situations"). Thus, "[Putnam's] equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319.

Moreover, Putnam concedes that the differential treatment is based on the date of his sentence, not on any constitutionally protected interest. Putnam's claim of an equal protection violation regarding application of the Habitual Felony Offender Act therefore likewise

> fails because he has not alleged, let alone established, that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin [and actually concedes such is not the case].  *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment

guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty"). Simply put, [Putnam] has not established that he was treated differently from similarly situated prisoners or that he was treated differently on account of invidious discrimination.

*Sweet*, 467 F.3d at 1319 (emphasis in original). Putnam has therefore not been denied equal protection of the law with respect his lack of eligibility for sentence reconsideration under *Ala. Code* § 13A-5-9.1.  In addition, as the court previously observed, *supra* at 26, the statute at issue did not have any impact, adverse or otherwise, on the sentence imposed upon Putnam.

    3.  <u>State Court Determinations</u>.  This court has undertaken a thorough review of the opinions issued by the state courts and controlling federal law.  After such review, it is clear that the state courts did not decide Putnam's equal protection claim "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law.  *Williams*, 362 U.S. at 412.  Consequently, the state courts' rejection of Putnam's challenge based on an alleged violation of his equal protection rights  was not contrary to actual Supreme Court decisions or violative of clearly established federal law. In addition, under the circumstances of this case, it is clear that the decisions issued by the state courts were objectively reasonable and constituted a reasonable determination of the facts in light of

the evidence before the courts.  Thus, Putnam is not entitled to federal habeas relief for any purported violation of rights secured by the Equal Protection Clause.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The 28 U.S.C. § 2254 petition for habeas corpus relief filed by David Lee Putnam be DENIED.

2.  This case be dismissed with prejudice.

It is further

ORDERED that on or before October 16, 2014 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d

33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

 DONE, this 2nd day of October, 2014.


     /s/ Susan Russ Walker
     SUSAN RUSS WALKER
     CHIEF UNITED STATES MAGISTRATE JUDGE